## ROGERS AND KAYS v. SIPLEY AND HUNT.

To constitute a misappropriation of commercial paper, the general rule
is, that the accommodation party must show that he has been injured
by the turning aside of the note from its original purpose, or that
such appropriation is not consistent with the agreement on which the
note was given.

Rule to show cause why a new trial should not be granted.
Certified from the Circuit Court of Sussex county.

This was a rule to show cause why a new trial should not
be granted, certified from the Circuit Court of the county of
Sussex.

The suit was on a note drawn by the defendants to the
plaintiffs. It was not negotiable. The amount was $300,
payable in two years, with interest. Sipley wanted to raise
money to pay for a pair of horses, and Hunt went on this
note as his surety. It was supposed that Sipley could borrow
this money on this note, of Rogers and Kays, but they refused
to make the loan, and Sipley then, without consulting Hunt,
passed the note to one Rosenkrantz, as collateral security for
a loan of $200, and in payment of an old debt of $48.47.
At the request of Rosenkrantz, Rogers and Kays endorsed the
note without recourse. It was then passed by Rosenkrantz
to one Decker, for whose benefit this suit was brought. A
verdict was taken in the Circuit for the $200, with interest,
and for $48 27, the amount of the old debt.

Argued at February Term, 1871, before BEASLEY, CHIEF-
JUSTICE, and Justices BEDLE, DALRIMPLE, and DEPUE.

For the plaintiffs, *T. Kays.*

For the defendants, *R. Hamilton.*

BEASLEY, CHIEF JUSTICE. This action is defended by Mr. Hunt, who is the accommodation maker of the note in suit. The main circumstance in the theory of this defence appears to be that Mr. Sipley, the principal in the transaction, was not authorized to obtain a loan on the security of this paper from any other source than from Messrs. Rogers and Kays. It is not shown that there was any express restriction of this character imposed on Mr. Sipley when the note was given to him ; but it is argued that such restriction was incident to the transaction, from the fact of the note being drawn payable to such parties only. But this assumption is a fallacy. A non-negotiable note may be put in circulation without first going into the hands of the payees, and any *bona fide* holder may sue upon it in their names, with their assent. There are a number of cases which hold this doctrine, some of which will be presently referred to, and there are none which have been cited, or which have been observed, taking an adverse view. The effect of this rule seems quite decisive on the point now raised. When Mr. Hunt permitted this note to pass into the possession of Mr. Sipley, he was chargeable with knowledge of the principle which made it legal for the latter to pass the note away to any one who would give him value for it. It is true he now says that he would not have consented to have his paper hawked about, but his misfortune is that he did not disclose such disinclination at the time, and narrow the rightful use of the note by express stipulation. The conditions of the case are these : Mr. Hunt was willing to assist, by the use of his name, Mr. Sipley in raising a certain sum of money. He signed a note, as accommodation maker, drawn payable to a particular firm, and placed it in the hands of Mr. Sipley, without any other limitations on the rights of the latter in the use of this paper than the affair itself implied. Under these circumstances, the unavoidable intendment is, that Mr. Sipley was authorized to apply this note to the relief of his necessity, in any legal way. It was not necessary that he should borrow the money from the particular persons designated in the note. That was a circum-

stance belonging to the form and not to the substance of the transaction. Nor was it wrongful for Mr. Sipley to apply this note in part payment of an old debt. It does not appear that Mr. Hunt was, in any way, interested in the appropriation of the money it was designed to raise on this paper. To constitute a misappropriation of a note of this character, the general rule is, that the person giving the accommodation must show that he has been injured by the turning aside of the note from its original purpose, or that the use which has been made of it is inconsistent with the agreement on which it was given. 2 *Par. B. & N.* 28. And it has been repeatedly decided that the mere fact that a note was intended to be discounted at a particular bank, or by a particular person, is no bar against a different appropriation of it. This rule is settled by the Court of Errors in this state, in the case of *Duncan, Sherman & Co.* v. *Gilbert*, 5 *Dutcher* 524. The note in suit in that case was given with the understanding that it was to be discounted by a particular bank, and it was not so used, but was deposited elsewhere as collateral security by the party for whose benefit it was given. The general principle is there stated in these words, viz. : "If the note has effected the substantial purpose for which it was designed by the parties, an accommodation endorser cannot object that the accommodation was not effected in the precise manner contemplated, where there is no fraud, and the interest of the endorser is not prejudiced."

There is a reported decision which, with respect to facts, is almost identical with the present case. I refer to the *Bank of Rutland* v. *Buck*, 5 *Wend.* 66. In that case, as in this, the note sued on was non-negotiable. The Bank of Rutland were the payees, and they refused to discount it, and it was passed away by the person for whose accommodation it was made, to a creditor, as collateral security for the payment of a judgment. Such creditor brought suit upon it in the name of the bank. The court held the transaction was legal, on the ground that the general purpose for which the note had been given was attained, and that the accommodation maker was

not interested in the appropriation of the note. It is not possible to distinguish this case from the one now before the court.

The Circuit Court should be advised to discharge the rule to show cause.

